HESSIG-ELLIS DRUG COMPANY, APPELLEE, v. HARLEY DRUG COMPANY, APPELLANT.

FILED FEBRUARY 13, 1914.   No. 17,553.

1. Trial: INSTRUCTIONS: EXCLUSION OF DEFENSE. Defendant alleged that plaintiff had not performed the conditions of the contract on its part, and evidence was introduced tending to prove such allegation. *Held*, That the defense should have been submitted to the jury under proper instructions.

2. Sales: MISBRANDED GOODS: ACTION FOR PRICE: RETURN OF GOODS. Plaintiff sold certain drugs to the defendant which were shown by the evidence to have been misbranded, and the defendant was prosecuted for offering the drugs for sale. *Held*, That plaintiff

should be required to take back the goods and credit the defendant with the price thereof in accordance with the terms of the contract of sale.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed.*

*C. Petrus Peterson,* for appellant.

*Mockett & Peterson, contra.*

BARNES, J.

Action to recover the sum of $720, with interest thereon at 7 per cent. from November 7, 1908, alleged to be due plaintiff from defendant for the sale of a quantity of patent medicine called "Notts Melon Seed Kidney Cure." Plaintiff alleged, in substance, that it was a corporation organized and doing business in Memphis, Tennessee, and defendant was a corporation organized and doing business in the city of Lincoln, Lancaster county, Nebraska; that on or about the 24th day of September, 1908, the defendant entered into a written contract with the plaintiff for the purchase of a certain product known as "Notts Kidney Cure," to wit, eight gross of said product at $48 a gross, and three and one-half gross of said product at $96 a gross. A copy of the contract was attached to the petition as exhibit A, and it was alleged that said contract was signed by the defendant in pursuance of an agreement marked exhibit B, also made a part of the petition. It was further alleged that the contract was subsequently modified by the agreement of both parties, so as to change the advertising part thereof from the Journal and News to the Lincoln Star, as indicated by exhibits C and D attached to and made a part of the petition. It was further alleged that on or about the 29th day of October, 1908, plaintiff billed the goods in question to the defendant at the freight depot of the Chicago, Rock Island & Pacific Railway Company at Memphis, Tennessee; that on or about the 7th day of November, 1908, the defendant received and accepted the goods, paid the freight thereon,

and is now in the possession thereof; that plaintiff had complied with all of the conditions and stipulations of said contract on its part to be performed, and that there was due from the defendant the sum of $720 with interest as above stated; that plaintiff had made repeated demands on defendant for payment, and that defendant had refused, and still refuses, to pay the same.

The defendant, for answer to the petition, alleged, in substance: First, that the plaintiff ought not to be permitted to maintain or prosecute this action because the plaintiff, at the time the alleged contract was made, was a foreign corporation; that is to say, a corporation organized and incorporated under the laws of the state of Tennessee, and not under the laws of the state of Nebraska, and was not an insurance company or railroad company having or maintaining an agent or agents in this state; and that plaintiff had not, on or before the time said contract was entered into, named or appointed any agent or agents in this state upon whom service of process or notice of any legal proceedings might be served, and was not authorized to transact any business of any kind in this state. As a second defense, it was alleged that on or about the 24th day of September, 1908, a representative of the plaintiff came to the city of Lincoln, where the place of business of the defendant then was, and now is, and then and there proposed to sell the defendant the property mentioned in the petition know as "Notts Kidney Cure," and produced blank forms of contract and filled up one of each of said blanks, which he retained, whereby it was agreed between plaintiff and defendant that none of the goods mentioned in exhibit B were to be shipped to the defendant until the advertising mentioned in exhibit A (which was attached to plaintiff's petition) was commenced, and the said advertising was to be from 10,000 to 20,000 lines agate measurement of advertising in the Nebraska State Journal and Lincoln Evening News; that, contrary to the agreement of the parties, the plaintiff shipped said goods mentioned in said exhibit B to this defendant before said advertising was commenced,

and the said advertising was never done in the Nebraska
State Journal and Lincoln Evening News, nor the Lin-
coln Star, as provided by the terms of said contract.   It
was further alleged that, when the goods arrived in the
city of Lincoln, defendant paid the freight thereon, ag-
gregating the sum of $20.09, before said goods were exam-
ined by defendant, and before it had an opportunity of
knowing, and before it knew, that the same were fraud-
ulently misbranded.  It was further alleged that the said
Notts (Melon Seed) Kidney Cure is a liquid, and is con-
tained in bottles which had blown thereon the words "Dr.
Notts Melon Seed Kidney and Bladder Cure;" and on
the reverse side thereof was a printed label with the
words "Dr. Notts Melon Seed Compound, Kidney & Blad-
der Remedy, 7% alcohol, guaranteed under the Food and
Drug Act of June 30, 1906.  Guarantee No. 1221;" that
each bottle was inclosed in a paper container or wrapper
bearing these words:  "This remedy is a scientific prepa-
ration, skilfully prepared, containing the active princi-
ple of Melon Seed so long and favorably known by physi-
cians of the United States as Nature's corrective for Kid-
ney and Bladder Diseases, combined with the most effect-
ive drugs known to modern science."   On the reverse side
of the wrapper or container were printed the words: "Dr.
Notts Melon Seed Compound, Contains 7% alcohol."

It was alleged that said drug was fraudulently mis-
branded in this:  That it did not contain any melon seed
or active principle of melon seed; that instead of contain-
ing 7 per cent. alcohol the same contained not more than 3½
per cent. of alcohol, as the plaintiff when it shipped said
property to defendant well knew; that the labels on said
bottles were false and fraudulent and untrue, because in
truth and in fact the contents of said bottles contained not
more than 3½ per cent. of alcohol, and that said label was
false and fraudulent in this:  That the statement on said
label affixed to said bottle that the contents of the bottle
were guaranteed under the Food and Drug Act of June 30,
1906, guarantee No. 1221, was false and untrue, and was
known to be false, fraudulent and untrue by the plaintiff

at the time and date of the shipment of said order.  It was further alleged that, after the goods mentioned in plaintiff's petition were received by defendant and placed in defendant's store on sale, the defendant was prosecuted by the state of Nebraska for having said goods for sale, for the reason that the same were misbranded and were offered for sale in violation of the laws of the state of Nebraska, and this defendant was convicted of having said goods in its possession for sale, and was fined in the sum of $10, and costs of suit taxed at $1.80; that, as soon as defendant learned that said goods were misbranded, defendant notified the plaintiff of that fact, and that the sale thereof in this state was in violation of law, and that offering the same for sale would be unlawful, and notified the plaintiff to immediately remove said goods and repay to it the said sum of $20.09 which it had paid as freight on said goods; but that plaintiff refused, and ever since has refused, to either remove said goods or repay the defendant the amount paid as aforesaid; that defendant has said goods and has kept them in its store ever since on or about the 15th day of November, 1908, and the fair and reasonable charge for storing said goods for said time is $10 a month, and that defendant is indebted to plaintiff on account thereof in the sum of $60.  Defendant denied each and every allegation contained in the petition not expressly admitted by its answer, and prayed that plaintiff's cause of action be dismissed, and that defendant have judgment against the plaintiff for the sum of $20.09, with interest thereon from November 15, 1908, and for the further sum of $60 for the storage of said goods.

Plaintiff's reply was, in substance, a general denial of the facts set forth in the defendant's answer.  Upon the issues thus presented the cause was tried to a jury.  A verdict was returned for the plaintiff for the sum of $797.75.  Judgment was rendered on the verdict, a motion for a new trial was overruled, and the defendant has brought the case to this court by appeal.

Defendant's first assignment of error, which relates to plaintiff's right to enter into the contract without having complied with the provisions of section 725, Rev. St. 1913, need not be decided in order to properly dispose of this case, and its determination is reserved for another time.

It appears that the district court instructed the jury that the only question which they could consider was whether the drugs in question were misbranded, and this is the second error of which defendant complains. It is contended that the defendant did not agree to the change in the contract alleged in plaintiff's petition, but insisted that a new contract should be entered into, and a corrected bill be sent by the plaintiff. The record discloses that plaintiff wrote a letter to the defendant, which is designated as exhibit D. This letter does not state that a new contract is inclosed, signed by the plaintiff, as per the offer of the defendant, and no new or corrected bill was sent the defendant. Exhibit D says: "Accept this letter as a part of your contract without affecting the rights of either party other than is expressed in this letter." This is an offer to amend the existing contract, and is not a new contract. This letter was produced as an agreement for a modification of the old contract. It does not conform to the offer of the defendant. As shown by exhibit C, that offer calls for a bill dating from the time the advertising started, and defendant at all times, after it was ascertained that the Journal and News would not print the plaintiff's advertisement, insisted upon the execution of a new contract. The contract sued on provided that, in case of default by the plaintiff to carry out the terms of the contract, the plaintiff would accept the goods returned at the full invoice price. It appears that the plaintiff defaulted, and was not able to carry out the advertising part of the contract as it had agreed; and the advertising part of the contract was never completed by the Lincoln Star; that plaintiff, though requested to take back the drugs, has at all times refused to comply

with its agreement. In view of these facts, that defense should have been submitted to the jury.

It is further contended that the verdict is not sustained by the evidence. It was alleged in the answer that the remedy in question was misbranded in that, it was said to contain 7 per cent. of alcohol, whereas it contained only $3\frac{1}{2}$ per cent. of alcohol. The evidence of State Chemist Redfern, who is a graduate chemist of the University of Nebraska, shows beyond all question that the drug contained only $3\frac{1}{2}$ per cent. alcohol. Mr. Ellis, a witness for the plaintiff, testified that he was a practical druggist; that, while he did not manufacture the compound himself, it was done under his direction; that he did not see the medicine compounded, but, according to his instructions and the manner in which the work was done, he was sure that it contained 7 per cent. of alcohol when it was billed out to the defendant. It is a significant fact, however, that plaintiff sent a letter to the defendant in which there was inclosed a bunch of labels to be pasted over the one upon each bottle stating that it contained $3\frac{5}{21}$ per cent. of alcohol. It also appears that the defendant was prosecuted by the state for having this misbranded article for sale in its store; that it was fined $10, and required to pay the costs of the prosecution; and it would seem that defendant was justified in refusing to further offer the drug for sale.

By the fifth instruction the jury were directed to find for the plaintiff in the sum of $699.91 with interest, unless they should find that the goods were misbranded. This instruction removed from the consideration of the jury the question of performance by the plaintiff, and in fact every other question except that of misbranding. On that question, we are of opinion that the evidence that the drug was misbranded was conclusive.

As we view the record, the case was not properly submitted to the jury, and for the errors complained of by the defendant, and discussed in this opinion, the judgment of

the district court is reversed, and the cause is remanded for further proceedings.

REVERSED.

LETTON, FAWCETT and HAMER, JJ., not sitting.